[Cite as *Dart v. Combs*, 2018-Ohio-420.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**DARKE COUNTY**

| | | |
|---|---|---|
| GREGORY L. DART | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 2017-CA-3 |
| | : | |
| v. | : | T.C. NO. 15-CV-307 |
| | : | |
| LAUREN COMBS | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 2nd day of February, 2018.

. . . . . . . . . . .

JOHN GLANKLER, Atty. Reg. No. 0089941, 10921 Reed Hartman Hwy., Suite 213, Cincinnati, Ohio 45242
        Attorney for Plaintiff-Appellant

JEFFREY D. SLYMAN, Atty. Reg. No. 0010098, 211 Kenbrook Drive, Suite #5, Vandalia, Ohio 45377
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

DONOVAN, J.

        **{¶ 1}** This matter is before the Court on the March 1, 2017 Notice of Appeal of

Gregory L. Dart.   Dart appeals from the February 2, 2017 dismissal of his fraud complaint

against Lauren Combs for failure of proof. We hereby affirm the judgment of the trial court.

{¶ 2} Dart filed his complaint against Combs on July 13, 2015. The complaint provides that Dart and Combs "may have a child together," and that the child "is the subject of a child custody case in Pulaski County, Kentucky." According to the complaint, Combs resided at 10585 Conover Road, in Versailles, Darke County prior to the birth of the child. The complaint provides that the child, GLD, was born in Lexington, Kentucky and then resided with Combs in Darke County from June 2009 until mid-June 2010. The complaint alleges that on May 25, 2010, Dart sought paternity testing at the Darke County Child Support Enforcement Agency ("CSEA"). According to Dart, Combs' "address in Darke County had been confirmed by Plaintiff in June of 2010 through the United States Postal Service and through the Darke County CSEA, which looked up Defendant's address." Dart alleged, however, that at "some time before July 8, 2010, when a hearing was set on Plaintiff's motion for genetic testing," Combs "or her counsel caused information to be told to Darke County CSEA, in particular that Defendant no longer resided in Darke County, Ohio, and had not for at least 180 days previously." According to the complaint, Combs "still resided in Darke County, Ohio, or at least had within the past 180 days." Dart alleged that as "a result of said misrepresentation, and without holding a hearing, the CSEA cancelled the genetic testing, and relinquished its jurisdiction of said matter." Dart alleged that Combs filed a "Petition for Custody and Visitation" in Pulaski County Kentucky on June 23, 2010, falsely claiming that she resided in Kentucky for 180 days prior to filing the petition. According to Dart, Combs in the petition asserted that " 'no other litigation concerning the custody of this child in any court of this or any

other state' was pending." Dart sought tort damages in excess of $25,000.00 and punitive damages.

{¶ 3} On July 30, 2015, Combs filed a "Motion to Dismiss/Motion for Attorneys [sic] Fees and Sanctions Pursuant to Ohio Revised Code 2323.51," asserting that "neither venue nor jurisdiction is proper in this Court." Combs asserted that the allegations that she resided in Darke County "are indeed false." She argued that Dart's complaint was subject to dismissal "for failure to state damages." Combs noted that the "Kentucky Court determined that it had proper jurisdiction as a result of the Defendant's address. As such, the issues raised by the Plaintiff are *res judicata.*"

{¶ 4} Dart opposed Combs' motion to dismiss on August 6, 2015. On August 28, 2015, the court issued a judgment entry finding that Dart "is a resident of the State of Ohio. His right to genetic paternity testing under Ohio law [see R.C. 3111.04(A), 3111.09] is considered a substantive right which, if frustrated by the Defendant's fraud or change of residence, establishes a nexus between the Defendant and this state." The court concluded that "jurisdiction over the Defendant exists and that a dismissal pursuant to Civil Rule 12(B) should not be granted." Regarding Combs' assertion that the court in Kentucky determined paternity, the court noted that the "complaint claims the Defendant acted in a fraudulent manner and caused misrepresentations which tortiously interfered with the Plaintiff's rights. The prayer is NOT for a determination of paternity but for money damages and other relief." The court noted that "from the pleadings, this Court cannot determine the residential requirements of the Kentucky Court for its jurisdiction *vis a vis* the alleged conduct of the Defendant. The Defendant has failed to prove that Plaintiff cannot establish a set of facts which would lead to the requested relief."

Finally, regarding venue, the court noted that the "issue was discussed with counsel during a conference call conducted on August 20, 2015. No record was made. Therein, counsel expressed interest in determining this issue following the Court's ruling on the prior issues." The court ordered the parties to "supplement their pleadings on the issue of Darke County venue on or before September 11, 2015."

{¶ 5} On September 16, 2015, the court filed a "Notice of Intent to Rule," extending the deadline for supplemental pleading until September 25, 2015. On September 17, 2015, Dart filed a "Supplement to Address Venue." Combs did not supplement her pleadings as ordered. On October 6, 2015, the court issued a "Judgment Entry – Determination of Venue," wherein it concluded that "the allegations of the complaint include actions of the Defendant which occurred in Darke County. Further, on the dates of the allegations, the Defendant was a resident of Darke County." The court concluded that "the motion to dismiss for lack of venue is dismissed." The court ordered the parties to "immediately commence discovery through December 31, 2015."

{¶ 6} On November 9, 2015, Combs filed an Answer to the complaint. On March 3, 2016 Dart filed a "Motion to Compel Responses to Discovery Requests," wherein he asserted that Combs answered the first four of 16 interrogatories "with no explanation or objection provided to the remainder. Further, very few responses were given to the Requests for Production of Documents, leaving many of the requests completely unaddressed." Dart asserted that he contacted opposing counsel and requested complete responses in 14 days, and that he had subsequent phone and email contact with counsel for Combs after the end of the 14 days. According to Dart, Combs' "only contention was that the Interrogatories, although only numbering 16, actually constituted

far more than that number. In addition, Defendant at that time expressed that Plaintiff's subpoenas would address most if not all the Requests for Production." Dart argued that "negotiations on the issues have reached an impasse, and the intervention of this Court is required." Attached to the motion to compel are Combs' responses to the interrogatories, Dart's request for production of documents, and January 19, 2016 correspondence from counsel for Dart to counsel for Combs regarding the lack of responses.

{¶ 7} Combs opposed the motion to compel on March 21, 2016, arguing that Dart's interrogatories exceed 40 when all of the subparts to the interrogatories are counted, and "therefore counsel for the Defendant is under no obligation to respond to same." Dart filed a reply, and on March 29, 2016, the court issued a "Judgment Entry – Plaintiff's Motion to Compel Discovery." The court concluded that Combs provided no authority for her interpretation of Civ.R. 33, granted Dart's motion to compel, and deferred ruling on sanctions. The court ordered Combs to provide complete answers and the documents requested on or before April 15, 2016.

{¶ 8} On May 16, 2016, "Plaintiff's Motion for an Order to Show Cause" was filed, seeking an order for Combs to "show cause why she should not be held in contempt of Court for failing to obey the Court's order of March 29th, 2016" to comply with Dart's discovery requests. On June 6, 2016, the court found Combs in contempt of the March 29, 2016 order and ordered that compliance "shall occur on or before **June 16, 2016** with Defendant's counsel to provide certification when completed." The court further indicated that it "hereby issues Notice of its authority to enforce its Orders, including directing a verdict in favor of Plaintiff and/or striking defenses and answers and/or

preventing presentation of testimony by Defendant and/or imposing other appropriate sanctions, including incarceration, monetary fines and attorney fees."

{¶ 9} On June 7, 2016, Dart filed a motion seeking to extend the deadlines for discovery, dispositive motions and the final trial date. Two days later, Combs opposed Dart's motion for an order to show cause. On June 13, 2016, Combs filed a "Motion for Reconsideration of Order Ordering Compliance with Discovery Order Filed June 6, 2016."

{¶ 10} On June 21, 2016, Combs filed a "Memorandum in Opposition to Request for Genetic Testing." She asserted that the "parentage of the minor child in this case is entirely irrelevant. Further, paternity has been established on two (2) separate occasions through the Court of proper jurisdiction, and that is Kentucky's Juvenile Court."

{¶ 11} On June 28, 2016, Dart filed "Plaintiff's Motion for and Order for Contempt and Rule 37 Sanctions against Defendant, Lauren Combs." On July 5, 2016, Dart filed "Plaintiff's Response to Defendant's Memorandum in Opposition to Plaintiff's Motion for an Order to Show Case and Plaintiff's Motion in Opposition to Defendant's Motion for Reconsideration of Order Ordering Compliance with Discovery Filed June 6, 2016." Also on July 5, 2016, Dart filed "Plaintiff's Response to Defendant's Memorandum in Opposition to Request for Genetic Testing."

{¶ 12} On July 21, 2016, the court issued a "Decision and Judgment Entry – Determining Various Pending Motions." The court determined in relevant part as follows:

1. Regarding the Defendant's request for reconsideration filed June 13, 2016, the Court finds the request not well taken. The terms of the Order dated June 6, 2016 compel the compliance with discovery requests that were received by the Defendants but not answered. The Defendant has

not established compliance with Plaintiff's discovery request nor has the Defendant filed appropriate objections to the discovery requests.    * * * The motion is denied.

* * *

3.   Regarding the Defendant's request filed June 21, 2016 which asks the Court to reconsider its Order compelling D.N.A. testing, the motion is overruled.   The results of the D.N.A. test may shed light on the motives and reasons for Defendant's conduct as alleged in the complaint; the D.N.A. results are discoverable and probative.    * * *   The motion is denied.

4.   Regarding the Plaintiff's request for additional sanctions filed June 28, 2016, the Court thereby [sic] gives notice of its intent to grant sanctions – the details of which are not yet decided.   Counsel for the Plaintiff shall support the motion with appropriate affidavit(s) and any further prayers for relief; Defendant may file any further response.   All subsequent pleadings on this issue shall be filed on or before July 30, 2016.

* * *

{¶ 13}  On July 28, 2016, the court issued an "ORDER – Ordering date, time and place for duel [sic] paternity DNA test of all three parties."   The court ordered the parties to appear on August 5, 2016 at Arcpoint Labs of Dayton and required Dart to pay the $325.00 cost of the paternity test, unless Combs failed to comply with the court's order. The order further provides that if Combs and her child fail to comply, Combs "will be in Contempt of Court."

{¶ 14} On July 29, 2016, Dart filed "Plaintiff's Supplemental Motion for Additional

Contempt and Rule 37 Sanctions against Defendant, Lauren Combs with Affidavit Attached." The motion provides that Dart "seeks to have certain factual matters deemed admitted in this action as a sanction for failure to comply with discovery requests," as well as an award of attorney fees "with regard to discovery requests and subsequent motions" in the amount of $3,501.50. The motion further "moves this Court for additional Contempt and Rule 37 Sanctions against Defendant * * * for failing to obey the Court's order of March 29th, 2016, as well as the Court's Order of Compliance with Discovery of June 6, 2016, wherein the Court ordered Defendant to comply with Plaintiff's Discovery Requests." Dart asked that Combs be prevented from using any information or documents produced by him or her in discovery "in any response she might file to Plaintiff's case dispositive motions or at trial," and that should Combs fail to comply with additional court orders, that the court issue a bench warrant for her arrest and a default judgment in Dart's favor. Attached to the motion is the affidavit of John Glankler, counsel for Dart.

{¶ 15} On August 11, 2016, Dart filed "Plaintiff's Revised Motion for an Order to Show Cause." Attached is the affidavit of Joseph C. Lucas, counsel for Dart, which provides that Lucas received a call from counsel for Combs on August 5, 2016, who stated that Combs was unable to attend the scheduled paternity test, "but that she could come on Monday at 3pm." The affidavit provides that Dart appeared as scheduled on August 5, 2016, and that counsel and Dart also appeared at the lab on the following Monday for the test. The affidavit provides that "when my client Greg Dart presented himself, the manager of the lab expressed great aggravation that he had been receiving phone calls from attorneys all day about this test and that he no longer wanted to perform testing for

this Court." Lucas averred that neither he nor any attorney at his firm contacted the lab on August 8, 2016. According to Lucas, the "manager of the lab stated that Ms. Combs would be giving a DNA sample separately at [3:30 p.m.] because he was told there was a restraining order or protection order against Greg Dart and they could not be present together." Lucas averred that he and Dart had no knowledge of a protection order. Lucas averred that Dart waited until 3:20 p.m., Combs failed to appear, and Dart then left the lab without providing a sample.

{¶ 16} Also attached to the motion is Dart's affidavit, which is consistent with that of Lucas. Also attached is the affidavit of John Glankler, which provides that he "received a verification from Defendant's attorney that he forwarded the July 28th, 2016 Court Ordered Paternity DNA Test for his client and that his client, Defendant Lauren Combs, was aware of the Court Ordered Paternity Test."

{¶ 17} On September 2, 2016, Dart filed "Plaintiff's Motion for an Order to Show Cause," arguing that Combs failed to comply with the court's revised scheduling order of June 10, 2016. Specifically, Dart asserted that Combs failed to participate in depositions scheduled for August 6, 2016, and that he "properly renoticed the deposition for August 25, 2016." The motion provides that Combs obtained new counsel who advised "that the earliest depositions could be rescheduled was October 13th, 2016." Attached to the motion is the affidavit of Joseph Lucas, which provides that he is "aware that Lauren Combs did not show up but a court reporter did for the renoticed deposition on August 25th, 2016." Also attached is the court's June 10, 2016 revised scheduling order and Dart's "Notice of Deposition with Proposed Order Attached" for August 25, 2016.

{¶ 18} On September 6, 2016, Dart filed "Plaintiff's Amended Motion for an Order

to Show Cause." On September 16, 2016, Attorney Jeffrey Slyman filed a "Notice of Substitution of Counsel" on Combs' behalf. On the same date, Combs filed a "Motion for Protective Order," which provides that counsel for Combs received a notice of deposition scheduled for September 20, 2016 "when a deposition had already been scheduled. * * * Counsel for Defendant is a Magistrate every Tuesday in Miamisburg Municipal Court and will be unavailable to attend this deposition." On September 21, 2016, Dart filed "Plaintiff's Response to Defendant's Motion for Protective Order (with Expedited Review Request by Plaintiff)." On September 21, 2016, Combs filed a "Jury Demand."

{¶ 19} On October 6, 2016, the Court issued a "Decision and Judgment Entry – Determining Pending Discovery Motions." The court granted Combs' motion for a protective order as to the deposition scheduled for September 20, 2016, and ordered Combs to participate in the October 13, 2016 deposition. As to Dart's show cause motion regarding the September 20, 2016 deposition, the court noted that its "decision of this motion will be deferred pending completion of the deposition ordered for October 13, 2016. The Court shall be notified by supplemental pleadings about the conduct of the deposition."

{¶ 20} On October 6, 2016, Dart filed "Plaintiff's Notice of Compliance with Defendant's Discovery Requests." Six days later he filed "Plaintiff's Response to Defendant's Jury Demand," asking that the court deny the request for a jury trial. On October 13, 2016, the court issued a "Judgment Entry – Denial of Jury Demand."

{¶ 21} On October 13, 2016, Dart filed "Plaintiff's Motion for a Summary Judgment." Dart asserted in part as follows:

In this case, fraud is clear. Defendant, by herself and/or through her counsel, claimed that she had been a resident of Kentucky for over 180 days, the amount required to initiate an action in Kentucky. This is patently false demonstrated by the evidence and facts provided, which show that Defendant undoubtedly exclusively resided in Ohio in 2010. Also, it is indisputable that Defendant fraudulently claimed that there was no action proceeding in any other jurisdiction, when in fact Plaintiff had already instituted a paternity action in Darke County. These allegations were made falsely, and with the intent of misleading others into relying on it. Given that Defendant employed an officer of the court in her charade, the representations were reliable. Plaintiff has been injured by said false representations in a variety of ways.

{¶ 22} Dart asserted that "failure to comply with orders issued by the court is grounds to warrant summary judgment," and he asserted that Combs failed to comply with the court's orders of March 29, June 6, June 10, and July 28, 2016. Dart requested "a Summary Judgment/Directed Verdict" as to eight facts regarding Combs' residency in Ohio. Dart requested an order for a DNA/paternity test, and a hearing on damages. Attached to the motion are Dart's, Lucas', and Glankler's affidavits, as well as 32 exhibits.

{¶ 23} On October 14, 2016, "Defendant's Motion for Summary Judgment" was filed. Combs argued that "Dart has previously litigated the paternity of his child and the residence of Combs. He has absolutely no evidence that this outcome would have been different if litigation initially ensued in Ohio. Dart voluntarily submitted to the jurisdiction of the Commonwealth of Kentucky and should be estopped and barred from relitigating

those issues before this Court." Attached in part to the motion is a certified copy of Combs' June 23, 2010 Petition for Custody and Visitation, filed in Pulaski Circuit Court, which provides in paragraph one that "Petitioner is a resident of the Commonwealth of Kentucky, her address 10 Muirfield Drive, Somerset, Kentucky 42503; has been a resident thereof for 180 days preceding the filing of this petition * * *." Paragraph 3 of the petition provides as follows:

3. [GLD] has resided with the petitioner since his date of birth and with only the petitioner since that time. * * * No other litigation concerning the custody of this child in any court of this or any other state and the petitioner knows of no party not named in these proceedings who has legal custody of this child or claims to have custody o[r] visitation rights therewith. * * *

{¶ 24} Also attached is Dart's July 21, 2010 "Response to Petition for Custody and Visitation." Paragraph 1 of the response provides: "Respondent admits to the allegations set forth in paragraph one (1) of the Petition for Custody and Visitation." Paragraph 3 of the response provides that "Respondent admits the allegations set forth in paragraph three (3) of the Petition, in so far as it correctly states that the minor child has resided with the Petitioner * * *." The response is signed by Dart following a verification line that provides: "I Greg Dart, hereby verify that the foregoing statements contained herein are true and correct as I verily believe." Dart's signature is notarized.

{¶ 25} Also attached is the affidavit of Joshua L. Evers, which provides that he is a Deputy Sheriff in Montgomery County, Ohio and the half-brother of Lauren Combs. Evers averred that he has "known Lauren has been a resident of the State of Kentucky since at least to 2005. I know this because my wife and I met in August 2005 and Lauren

resided in Kentucky at that time." According to Evers, since "Lauren's move to Kentucky, she has not returned to the State of Ohio as a resident. Lauren has visited Ohio from time to time for a few days, when our mother lived outside of Versailles, Ohio, Darke County, Ohio."

{¶ 26} Also attached is a copy of April 19, 2013 "Findings of Fact and Conclusions of Law and Order of Custody" from the Commonwealth of Kentucky, 28th Judicial Circuit, Pulaski Circuit Court, Civil Action No. 10-CI-00907, Division III, listing the following factual finding: "The petitioner, Lauren Combs, currently resides, and at the time of the filing of the petition for custody resided in Pulaski County, Commonwealth of Kentucky, and has been a resident of Kentucky since 2005." Another factual finding is as follows: "The court ordered DNA paternity test results, dated February 25, 2011, indicate a 99.99% probability that the respondent is the father of GLD."[1]

{¶ 27} Also attached is a certified copy of a September 19, 2014 Opinion from the Commonwealth of Kentucky Court of Appeals, in *Dart v. Combs*, Case No. 2013CA-000876-ME, which provides that "Greg argues that the family court erred in its calculation of his child support obligation, assignment of medical expense, and denial of parenting time. In addition, Greg argues that the family court erred in denying his post-trial motion to amend the custody order by removing the 'final and appealable' designation." Combs' March 16, 2012 deposition is also attached to her motion.

{¶ 28} On October 28, 2016, Combs replied to Dart's motion for summary judgment. She asserted that the "evidence and arguments of Plaintiff are a ruse and red

---

[1] The court further ordered Dart to "complete a psychological (custodial/visitation evaluation" and to pay $3,000.00 per month in child support along with $500.00 per month in arrearage.

herring in an obvious attempt to divert this Court's attention from the fact that the doctrines of collateral estoppel and res judicata bar Plaintiff from proceeding." She asserted that Dart "admitted that Defendant was a resident of Kentucky in the proceedings related to custody. Additionally, the highest court in Kentucky has similarly made that specific factual determination." She asserted that the "undisputed facts reflect that Defendant was in fact a resident of Kentucky."

{¶ 29} On October 31, 2016, Dart filed "Plaintiff's Memorandum in Opposition to Defendant's Motion for a Summary Judgment." He asserted that Combs "clings to a few scant pieces of circumstantial evidence to claim that she was a resident of the State of Kentucky during the relevant period." He asserts that the "term resident can have a variety of meanings." Dart asserted that Evers' affidavit is not credible. Dart attached Evers' deposition. Dart argued as follows:

> Regarding factual issues, Defendant desperately attempts to conflate paternity with residency. Defendant in her Motion states that Plaintiff's claim of fraud is grounded in the paternity issue in this case. * * * The fraud is premised on residency, and Defendant's attempt to defraud Plaintiff by lying about residency. In addition, Plaintiff has and can continue to show that if a fair, honest hearing were held in Ohio, where Defendant actually resided, he would have received a far more sane [sic] outcome regarding child support. * * *

{¶ 30} Dart asserted that the "application of res judicata is not absolute, and can be circumvented in certain situations, pertinently in instances of fraud." Dart argued that Combs waived any res judicata defense by failing to plead it in her answer.

{¶ 31} On October 31, 2016, Dart filed "Plaintiff's Motion to Strike the Affidavit of Joshua L. Evers," asserting that it is inconsistent with Evers' deposition, and that Evers provided three legal opinions in that affidavit, "which are also inadmissible." On the same day, Dart filed "Plaintiff's Motion for Leave to Supplement Plaintiff's Motion for Summary Judgment with Proposed Order." Therein Dart asserted that he filed his motion for summary judgment on the morning of October 13, 2016, and that Combs was deposed on the afternoon of the same day. He asserted that in "light of this new testimony, Plaintiff would like leave to file a Supplement to his Motion for Summary Judgment." We note that no proposed order is attached to the motion for leave. Also on October 31, 2016, Dart filed "Plaintiff's Supplement to Plaintiff's Motion for Summary Judgment."

{¶ 32} On November 14, 2016, Dart filed "Plaintiff's Motion to Strike an Exhibit from the Defendant's Reply to Summary Judgment filed by Plaintiff." On the same day, Dart filed "Plaintiff's Reply in Support of Plaintiff's Motion for Summary Judgment." On November 14, 2015, Dart filed a "Motion to Compel Discovery," to compel "Arcpoint Labs of Dayton to comply with the Subpoena Duces Tecum issued on August 8th, 2016." On November 15, 2016, Dart filed a "Motion for Leave to File Amended Supplement to the Plaintiff's Motion for Summary Judgment with Proposed Order." On the same day, Dart filed "Plaintiff's Notice of Withdrawal of Supplement to Plaintiff's Motion for Summary Judgment," which provides that since "the Motion for Leave had not yet been granted, the Supplement itself was not before this Court. Plaintiff is also filing a new Motion for Leave and an Amended Supplement on the date of this filing." On November 22, 2016, Dart filed "Plaintiff's Amended Motion to Strike the Affidavit of Joshua L. Evers."

{¶ 33} On December 1, 2016, the court issued a "Judgment Entry – Denying Cross

Motions for Summary Judgment." The court initially overruled the "objections/motions to strike which were filed subsequent to the pending motions." Regarding Dart's motion for summary judgment, the court concluded as follows:

> * * * First, the facts are clearly in dispute though the Plaintiff may believe that he has overwhelming direct and circumstantial evidence to the contrary. Even if summary judgment was granted, there would still be disputed facts regarding the Plaintiff's damages which would require a trial. Second, granting summary judgment for discovery violations does not resolve the underlying factual disputes which are best resolved by the presentation of evidence, [and] the weighing of credibility within the crucible of the courtroom. * * *

**{¶ 34}** Regarding Combs' motion for summary judgment, the court noted that "the gravamen of this litigation involves the paternity determination of the minor child. However, the allegations and relevant facts of this litigation involve the question of whether the Defendant committed a fraud upon the Plaintiff when invoking the jurisdiction of the Kentucky court." The court further noted that Dart "is correct in asserting that a judgment which is premised upon fraudulent conduct does not enjoy the privileges of res judicata." The court determined that "there are genuine issues of material fact whether there was fraud in the inducement of the Kentucky Court to invoke its jurisdiction. Such allegations call into question the application of the doctrine of res judicata and collateral estoppel." The court concluded as follows:

> In the case before the Court, there are genuine issues of material fact which are still in dispute, most notably the Defendant's residence at the

time of the Kentucky court proceedings. The disputed facts include: her permanent residence address in Versailles; her representation to the Kentucky Court of her residing in Kentucky since 2005; whether Kentucky was merely a temporary college address; the existence of forwarding orders for mail service and reasons therefor; the information, representations and signature she provided on documents signed at the Darke County Job and Family Services agency indicating an Ohio residence; etc. There are disputed facts and the inferences that may be derived therefrom.

Further, the Court has previously issued various orders due to the Defendant's non-compliance with the Rules of Civil Procedure as they pertain to discovery. To grant summary judgment when Defendant has not complied with the Court's orders would only serve to validate her apparent failure to properly participate in this litigation and comply with Court orders.

Therefore, for the above stated reasons, the Court finds that the Defendant is not entitled to summary judgment. * * *

**{¶ 35}** On December 1, 2016, the court ordered Dart, Combs, and GLD to appear at the Darke County Court of Common Pleas to submit to D.N.A. testing on December 16, 2016. On December 13, 2016, Combs filed "Defendant's Motion for Protection Order." According to Combs, Dart "has every incentive to manipulate, compromise and fabricate an improper DNA result. He is attempting, through the current litigation, to undo a judicial determination by the [C]ommonwealth of Kentucky that should be given full faith and credit." Combs attached a portion of her November 11, 2016 deposition.

**{¶ 36}** On December 15, 2016, Dart opposed Combs' motion for a protective order,

asserting that Combs for the third time is attempting to disobey the court's order for a DNA test. He asserted that the first DNA test was a "mail order" test that "states on the report that it is not admissible in court," and the second test "was conducted by LabCorp under the 'private account' of Defendant's Kentucky attorney Ralph D. Gibson and was not conducted pursuant to the orders of the Pulaski Circuit Court." Dart asserted that "the paperwork for the second test was falsified by the Defendant's Kentucky attorney as the Defendant, herself, admitted to both in her October 13th, 2016 deposition and in her November 11th, 2016 deposition and was never entered on the record by the Pulaski Circuit Court." Dart argued that "the Kentucky Supreme Court has never ruled on any issues in the matters of Combs v. Dart (10-CI-00907) as has been explained by Plaintiff's counsel on several occasions to the Defendant's counsel. * * * The Kentucky Appeal (2013-000876-ME) never even touched on paternity." On December 15, 2016, the court denied Combs' motion for a protective order.

{¶ 37} On December 16, 2016, the court issued a "Decision and Entry: Finding Defendant in Contempt." The decision and entry provides that the "matter came before the Court following settlement conference on December 16, 2016." The entry provides that Dart and his counsel appeared for the conference, Combs failed to appear, and Jeffrey Slyman appeared on her behalf. The court noted Combs' repeated failures to comply with its orders, and that Combs had knowledge of her duty to appear at the conference and submit to the DNA testing prior to the conference, and found that her "failure to appear and comply are deemed reckless indifference to the trial court's order." The court found Combs "in direct and criminal contempt of the Court's order to appear for settlement conference and to comply * * * with the D.N.A. test." The court noted that the

matter is set for trial on January 4 and 5, 2017, and it ordered Combs to appear and submit to D.N.A. testing, "including her providing the child's appearance." The court issued notice to Combs "of its authority to enforce its Orders, including directing a verdict in favor of Plaintiff and/or striking defenses and answers and/or preventing presentation of testimony by Defendant and/or imposing other appropriate sanctions, including incarceration, monetary fines and attorney fees."

{¶ 38} On December 22, 2016, Dart filed "Plaintiff's Motion to Birfurcate" the "factual issues from damages." According to Dart, Combs' "repeated failures to participate in discovery in this case have created the risk that Plaintiff may have difficulty proving certain aspects of its damages at trial." Dart argued that since Combs failed to submit to D.N.A. testing, "overpayment of child support cannot be reasonably calculated," and that Combs failed to comply with discovery requests regarding her financial assets and income. On December 29, 2016, Dart filed a "Motion in Limine," asking the court to prohibit Combs from "calling any witnesses, or presenting any evidence at trial." Dart noted that pursuant to the revised scheduling order, all trial witnesses were to be disclosed on or before December 2, 2016, and he asserted that the only witness disclosed by Combs is attorney Todd Severt, an expert who will testify regarding attorney fees. Dart further asserted that Combs failed to exchange exhibit books pursuant to the revised scheduling order "no fewer than 10 days prior to trial."

{¶ 39} On January 3, 2017, Dart filed "Plaintiff's Notice of Failure to Comply with Subpoenas and Orders of this Court." Dart directed the court's attention to "the failure of the Pulaski County, Kentucky, Circuit Court and Ralph Gibson to comply with a lawful subpoena order by this Court." According to Dart, on "December 14th, 2016, this Court

issued an Order and Commission for a Foreign Deposition of Ralph Gibson and Regina Combs." Dart argued that on December 27, 2016, he "received a copy of said subpoena back, signed by a Pulaski Circuit Court Judge, but otherwise unserved," and that he "acted immediately to render service on the subpoenas, now signed by two judges in two states, to Gibson and Regina Combs." Dart asserted that several hours after Gibson received his subpoena, Dart received a Motion to Set Aside Order, to Quash Subpoena and for Protective Order filed by Gibson in "the Pulaski Circuit Court, ignoring the order of this Court." Dart asserted that Gibson "immediately received a hearing on the matter on January 6th, 2017." He argued that Gibson falsely stated in his Motion that the instant action is a "post divorce proceeding," and that Gibson "does not transact business in Ohio." Dart asserted that Gibson requested attorney fees "for any work he may have to conduct in order to prepare for a deposition," and that he failed to notify the court of his motion.

{¶ 40} At trial, Combs failed to appear, and Attorney Slyman appeared on her behalf. An employee from DNA Diagnostics was also present. Counsel for Dart directed the court's attention to the pending liminal motion, noting that Combs failed to appear for paternity testing four times, on August 5, 8, December 16, and presently. Counsel conceded that "the vast majority of the documents provided in Defendant's Exhibit book are documents that were either provided in discovery or were provided by the Plaintiff in this case." Counsel argued that after the December 16 failure to appear, the court issued an order finding her criminally in contempt and reserving sanctions, and counsel requested monetary sanctions for "attorney fees, costs paid to DNA Diagnostics, and Arcpoint Labs, and other fees associated," and "sanctions to her for her failure to

appear at this point."

**{¶ 41}** Counsel for Combs responded that Dart added exhibits not previously disclosed, and that Combs' exhibits, but one, are identical to Dart's. He stated that the "witnesses that I have are already witnesses that have been identified in discovery. Two of the witnesses they've had an opportunity to take their depositions. My witnesses are his witnesses." Counsel asserted, "As it relates to contempt, obviously my client is not here. I don't have any excuse for her non-appearance. I'm not sure that it's accurate that you found her in criminal contempt."

**{¶ 42}** The court indicated that "non-compliance with discovery is always a two-part analysis. Was there failure to comply and then second is it prejudicial. So I'm not going to issue a blanket ruling." The court noted that there were some exhibits that were added or updated by Dart, and that "there is a certain expectation that you keep supplementing and keep getting work done as you get closer and closer to trial." The court concluded, with "regard to the failure to comply and failure to attend, you're welcome to present testimony during the course of the hearing with regard to economic damages as a result of the Defendant's failure to comply. I'm not going to make any pre-evidentiary rulings at this point in time or decisions with regard to damages."

**{¶ 43}** Dart testified that he is a general contractor and that he met Combs in mid-July of 2008 at the Lowe's in Bellbrook, where he was shopping with Combs' grandparents and mother for building materials. Dart testified that he was remodeling Combs' grandparents' home. Dart stated that his business is GL Dart General Contracting. He testified that it was a large project, and that he was at the home "sometimes daily." He stated that he saw Combs at the home "probably five, six times

at least." He testified that Combs "was staying there some and sometimes she was at her house in Versailles." Dart stated that he saw Combs regularly in August of 2008, and that they developed a relationship outside of the "jobsite." According to Dart, in August of 2008, Combs "lived at her mother's house or her house in Versailles when she went to school in Kentucky." He stated that Combs "told me that she had a place where she went to school and she had lived in college but she came home to Versailles." He stated that Combs told him that her "stepfather Marlay Price had a guest house and pretty much an estate and that she had a wing of the house to herself and that was where she had grown up beside Waynesville, Ohio. * * * So I knew she was from Ohio but went to school in Kentucky."

{¶ 44} Dart testified that in September of 2008, he visited Combs' apartment in Kentucky. He stated that he "drove down there one weekend for a few hours to kind of see where she was from and get to know her a little better." He stated that he "went to a Native American festival in Corbin, Kentucky, and then I went to her apartment afterwards" for 30-45 minutes. He stated that he noticed that "boxes were still stacked up all over the place and there was no wall hangings or decorations or really much of anything put away." According to Dart, it "was almost like she was either moving or had just moved and I asked her, * * * do you live here or did you just move here? And she said, no, I've just never unpacked it all." He stated that he thought Combs "just kind of had an apartment there for the heck of it and I think it's been an ongoing thing."

{¶ 45} Dart testified that Combs appeared unexpectedly at his office late one evening in September 2008, and that on another occasion, after bringing the keys to her grandparents' home to Dart at a gas station in Bellbrook, she followed him to his home.

On another occasion, Dart testified that Combs "showed up at my office one time and then I had to leave and she ended up at my house." When asked when the child was conceived, Dart stated that he and Combs had sexual relations one time after she appeared at his home, awakened him, and "proceeded to not want to leave" after he asked her to do so.

{¶ 46} Dart testified that two weeks later he was working late at his office when Combs called and said she needed to talk to him, and that she was on her way up from school to see him. He stated that it "sounded like something important so I said all right." Dart testified that Combs told him she had taken a pregnancy test, that she was pregnant, and that she believed the baby was his.

{¶ 47} Dart testified that the child was born in June 2009, and that Combs lived in Versailles prior to the birth. He stated that at the time he "talked to her sometimes on a daily basis in great lengths for multiple times a day, talked to her mother. She was at - - in her house in Versailles, Ohio. On Conover Road." He stated that Combs "would offer to come down and talk with me at my office, my house, my job. I mean, she wanted to go eat. She wanted me to marry her." Dart testified that he "dealt with it for months on end and it was exhausting and at times insanity for me. I mean, I know where she was. I know she may have gone back to where she said she was going to school at this apartment that had boxes in it and whatever, but she lived in Ohio." He stated that Combs told him she was interested in Cedarville College so that the child could be near him.

{¶ 48} Dart testified that he contacted Combs by cell phone. He stated that GLD was born in "Lexington, Kentucky at U.K. Hospital." He testified that when Combs called

and told him she was going to the hospital, he asked her why she was not going to "Miami Valley like you went to before or to Sycamore, or * * * Grandview," and that Combs "said well, that's just what I'm going to do." Between June to December 31, 2009, Dart stated that he observed Combs in person many times. He testified that one night in July or August, 2009, Combs and her mother "showed up at my house one night" in Bellbrook with the baby. Dart stated that he and Combs bought clothes for GLD at Marshall's in Centerville, and that on another occasion he met them at Bob Evans in Centerville and went to Target and "bought him a play pen" in 2010. Dart stated that he went to Kentucky in February or March of 2010 one time for a "dedication" for GLD in Hazard Kentucky, and that Combs told him "that is where she had been going to church some when she went to college."

{¶ 49} Regarding the paternity tests, Dart testified that he met Combs at Indian Ripple Park, "which we met at * * * regularly for visits with [GLD]" to take the test. He stated that the box was opened and that Combs told him GLD "got into the box and started playing with it." He testified that Combs told him she had another unopened test and went to get it at her grandmother's house. He stated that the "results came to Lauren and I never got any results, and they were sent to me via email picture." He stated that the test was taken in May of 2010. He identified as Exhibit 1, the results of the test as represented by Combs, which "said 99.9 something that the sample people on this test, whoever that may be since it doesn't actually say, is a match to be a father and the child match." [sic.]

{¶ 50} Dart testified that he saw Lauren in Ohio many times prior to May 25, 2010, and that Combs "has documented 14 exact times I saw her in Ohio with [GLD]." Dart

stated that he believed that Combs was living on Conover Road in Versailles for the first half of 2010. He stated that at the time he "saw her randomly and she was pursuing me heavily to marry her and I was trying to figure this out." When asked why he believed that Combs lived in Ohio the first half of 2010, Dart stated, "Because I saw her. Every time I saw her she was in Ohio and she would call me and want to know if I would want to meet for lunch or dinner or go to outings with her and [GLD]. I met her multiple times at stores and restaurants and parks."

{¶ 51} Dart identified as Exhibit 2 an application for paternity testing that was faxed to him by the Darke County Child Support Enforcement Agency, and he testified that he completed and returned it on May 25, 2010. Dart testified that he listed Combs' address thereon as 10585 Conover Road, Versailles, Ohio, 45380. He stated that the test was scheduled for July 20th, 2010.

{¶ 52} Dart identified Exhibit 9 as "birthday cards that my mom told me she was going to send to [GLD] because I wasn't really communicating with Lauren and I wanted to send him a birthday card so she sent two." The envelopes reflect a Corbin, Kentucky address. When asked if he was aware of the address for the cards, Dart responded, "I definitely was because Lauren had called us and said that she was going - - permanently going to Kentucky and she gave us a new phone number and also told my mom and I on a three-way phone call that she was moving back to Kentucky and she was never coming back and I was never going to see [GLD] again and she was going to ruin me * * *." Dart stated that the cards were sent on June 8, 2010, and that received a phone call from Combs around that time from a 606 area code. Dart stated that Combs' previous number had a 937 area code. Dart identified Exhibit 11 as "a fax transmittal sent from Ralph

Gibson to CSEA of Darke County" consisting of four pages, including Combs' petition for custody and visitation in Kentucky.

**{¶ 53}** Diane Canby testified that she is Dart's mother.   She stated that she met Combs in September of 2008.   She stated that she first learned, in August 2009, that Combs had a child when Combs' mother phoned her to tell her that GLD had been born. She stated that after that time she and Combs spoke on the phone "[s]ometimes very frequently, other times it would be quite periods.   Sometimes she would call multiple times a day.   Other times it would go quite a few days in between calls." When asked, during the period of June 2009 to June 2010, if she had personal knowledge of Combs' whereabouts, Canby replied, that the "only knowledge I had is what she shared with me. She told me she lived with her mother in Versailles, Ohio, and that she often visited her grandmother * * * in Kettering."   She testified that in May, 2010, Combs "saw a swing set at Sam's over in the Dayton Mall area in Miamisburg and she - - it was a thousand dollars and she wanted Greg to buy it for [GLD] and she was going to * * * have it built in Versailles."   Canby stated that in late August of 2009, Combs told her that "she was applying to Cedarville University because she wanted to go back to school."   Canby testified that Combs "never mentioned Kentucky other than she had been in school there." She identified her phone records from Verizon.

**{¶ 54}** Canby stated that she and Dart met Combs and her father at Bob Evans in Centerville in March 2010 to discuss the paternity test.   Additionally, Canby testified that she met Combs "at Indian Ripple Park in Kettering off of Stroop Road in late March. Then I went to the country club for lunch with her and Greg in April right after Easter." The following exchange occurred:

Q.   Did you ever visit Lauren or [GLD] or [Combs' mother] or anyone outside of Ohio?

A.   Never.

Q.   * * *Were you ever invited to do so or aware that some kind of meeting or gathering was taking place outside of - -

A.   I was invited to [GLD's] first birthday in June of 2010 and she sent me an email and sent me a new telephone number and she said that - - and she sent me a new address, said she was living on Muirfield Drive in Saddlebrook or in Somerset.

{¶ 55} Canby stated that on June 13, 2010 she received a call from Combs from a phone number with a 606 area code, which she identified on her phone records. Canby identified Exhibit 9 as the cards that she sent to Combs and GLD at a Jasmine Circle, Corbin, Kentucky address. Canby stated that she sent the cards to that address after an online search of Combs produced that address, and after she "called Greg and asked him if that's where he had seen her the time he went to Kentucky and he said yes.   So I sent them there."   Canby stated that the cards were returned to her with forwarding stickers to the Versailles address.

{¶ 56} Dart then again testified.   He identified as Exhibit 40A a binder containing his "attorneys fees," and Exhibit 40(B), as "bills that I've had to pay or have incurred." Dart stated that Exhibit 41 reflects "everything * * * I had to pawn, sell, or borrow against to pay child support or legal fees   * * * during the past * * * six, seven years."   Dart testified that his child support is in arrears, and that he "paid it for as long as I could."   He stated that he has paid over $100,000.00 in support.

{¶ 57} Joshua Evers testified that he lives in Dayton and is employed as a sergeant with the Montgomery County Sheriff's Office. He testified that Combs is his half-sister, and that they have the same mother. Evers stated that Combs was born in 1985 and that he is eight years older than she is. He testified that he visited Combs in Somerset, Kentucky in 2009 when she was pregnant. He testified that Combs resided in a single-story residence there that she rented. Evers stated that there were three bedrooms "in a small development that I remember it had a like fitness center at the country club area." Evers testified that he and his wife visited Combs for "a few weeks," and that he was on "injury leave." Evers testified that Combs has resided in Kentucky since 2005. On cross-examination, Evers testified that his mother lived in Darke County, in Versailles, on Conover Road, and that Combs had a room in the house when she was a teenager.

{¶ 58} At the close of the evidence, both parties moved for a directed verdict, and the court overruled both motions. After reviewing the facts adduced, the court found as follows (footnote omitted):

* * *

Further, understanding "residency" is essential in the determination of this case. However, there is no definition found in Chapter 3111 of the Revised Code under which authority the Plaintiff sought the paternity test. Therefore, the Court is guided by [a] more general interpretation of "residency" pertaining to jurisdiction for divorces and dissolutions. "The word 'resident' [for purposes of Chapter 3105] * * * means one who possesses a domiciliary residence, a residence accompanied by an intention to make the state of Ohio a permanent home." *Coleman v.*

*Coleman*, 32 Ohio St.2d 155, 162, 291 N.E.2d 530 (1972); see also *Barth v. Barth*, 113 Ohio St.3d 27, 862 N.E.2d 496, 2007-Ohio-LEXIS 641. Such definition is applied to this case.

## Decision

For the following reasons, the Court finds that the Plaintiff has failed to prove his claims for civil fraud against Defendant.

**First**, there do not appear to be any false representations by Defendant about her residence which were related to the [Darke County Jobs and Family Services] administrative action. The Plaintiff had reasonable understandings of the places where Defendant stayed: family members['] homes in Montgomery and Darke counties. However, Defendant's statements and actions were not communicated to Plaintiff to cause any response by the Plaintiff. Instead, his conclusion about her residency and his decision to proceed with administrative processes in Darke County were based on his own reasonable deductions.

**Second**, the Court is not convinced that Defendant's residence was actually in Darke County in May and June, 2010. Plaintiff moved to Kentucky in 2005 to attended [sic] Asbury College and has attended other colleges since then; and continues to take college courses but not seek employment; such facts add credence to Plaintiff's argument that she still resides in Ohio but these facts neither prove nor disprove residency. Change of address cards through the United States Postal service are similarly not outcome determinative. Cell phone records and cell tower

data may indicate where a phone is used and who receives the billing, but the intrinsic mobility of a cell phone provides little evidence of residency. Driver [sic] license records may be more persuasive, but such was not admitted; and with the possibility of holding multiple licenses, such are not conclusive. The Court did not receive more persuasive records which might be more definitive of "residency," such as voter registration records and voter attendance records. Such weaknesses do not indicate a lack of effort by the Plaintiff, but demonstrate the difficulty of proving "intent to make a permanent home" by documentary evidence – especially for a relatively transient person.

**Finally,** it is unclear whether any causal connection exists between the residence dispute here and the Plaintiff's injury. When the paternity action was commenced in Kentucky, the Plaintiff was afforded the opportunity to challenge the jurisdiction of the Kentucky court. Since the jurisdiction was not refused in Kentucky, the Court concludes there is no causal connection between any potential fraud by the Defendant and Plaintiff's injury was severed.

## Defendant's Contempt

\* \* \*

Sanctions for contempt are set forth under various provisions of the Civil Rules regulating discovery (eg. Rule 36 and 37) and are also authorize[d] by the inherent authority of a court to enforce its own orders.

As stated in prior decisions rendered herein, the Defendant's failure

to comply with the Rules of Civil Procedure and with prior Entries of this Court is not unnoticed. The Court re-affirms is [sic] prior findings of contempt issued herein.

Further, the Defendant failed to appear for trial as ordered on December 16, 2016 thus directing her disobedience at the Court, hindering the trial process by not being available for testimony and frustrating the Court's ability to remedy the Defendant's previous failures to comply. The Defendant through counsel has consistently expressed her skepticism about the merits of the Plaintiff's claims. By her words and conduct, Defendant has steadfastly refused a D.N.A. test which increasingly drives a wedge between the two parents. Her manipulation of her own counsel and use of systems to further her agenda have increased costs of litigation and delayed the litigation process. Such recalcitrance is the bane of the law and seems rooted in principles of vigilantism.

Accordingly, for her conduct since December 16, 2016, the Court finds that the Defendant has again committed contempt against the Court and the opposing party. As such, additional sanctions against her are appropriate and necessary. As sanctions herein, the Court finds that Defendant shall pay Plaintiff for attorney fees related to trial. Mr. Glankler's hourly rate of $185.00 is deemed reasonable based on the Court's knowledge of attorney fee rates in this area for this type of litigation. From the Court's trial notes, there were seven (7) hours of trial time on January 4th and three (3) hours of trial time on January 5th. Travel time to and from

Greenville is set at 11/2 hours each way for a total of six (6) hours on both days. Based on the number of exhibits prepared and presented, the subject matter of witness testimony and reasonable time to prepare and assemble matters for trial, the Court finds that fifteen (15) hours of attorney time is a minimum amount of effort for Plaintiff's counsel to prepare for trial. Accordingly, Plaintiff is granted reimbursement from Defendant for attorney fees of $5,735.00.

Further, in its prior Entry dated December 19, 2016, the Court reserved the imposition of sanctions against Defendant for her prior acts of contempt. The subject matter of her contempt involved non-compliance with deposition orders from September, 2016 through legal work leading to the Entry on December 19, 2016. Based on the trial exhibits herein [Pl. Ex. 40(A)] the Court finds that Plaintiff is entitled to an award of attorney fees for such contempt in the amount of $3,126.50 (16.9 hours @ $185.00 per hour). Note: while the contempt was previously determined to be direct contempt, the Court now determines that the award shall be converted to punishment for civil contempt since the trial date has passed and further direct remedies are not available once the case is concluded.

Finally, on July 29, 2016, pursuant to the Court' decision filed July 21, 2016, the Plaintiff filed an affidavit regarding attorney fees and expenses incurred as a result of a contempt finding by the Court for conduct prior to July, 2016. The court finds that Defendant shall be sanctioned in the amount of $3,501.50.

The total award of attorney fees granted in favor of Plaintiff and against the Defendant in this matter totals $12,363.00 for which judgment is granted in favor of Plaintiff.

**IT IS THEREFORE ORDERED AND DECREED** that Plaintiff's complaint is dismissed for failure of proof.

**IT IS FURTHER ORDERED AND DECREED** that Plaintiff is granted a lump sum judgment against Defendant in the amount of $12,363.00 plus interest at the judgment rate of three percent (3%) per annum.

**IT IS FURTHER ORDERED AND DECREED** that Defendant shall pay the costs of the genetic testing lab fees that were incurred though Defendant failed to appear. Plaintiff's counsel shall provide the Court with verification within seven (7) days hereafter so that a lump sum amount can be awarded.

**{¶ 59}** Dart asserts five assignments of error herein. We note that Combs did not file a brief in response. Dart's first assignment of error is as follows:

THE TRIAL COURT ERRED BY DENYING PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS PURSUANT TO CIV.R. 37(B) AND/OR BY FAILING TO IMPOSE DEFAULT JUDGMENT IN FAVOR OF DART.

**{¶ 60}** Dart asserts that "Civ.R. 37(B)(2) allows the court to order certain facts established, prevent the non-complying party from submitting evidence, and granting default judgment, among other remedies." He directs our attention to *Lyons v. Kindell,* 2015-Ohio-1709, 35 N.E.3d 7 (1st Dist.), which held that the trial court did not abuse its discretion in entering a default judgment in favor of Lyons as a Civ.R. 37(B) sanction,

since "Kindell's utter failure to respond to Lyons' discovery requests 'cannot be construed as a good faith effort to comply.' " *Id.*, ¶ 27 (citation omitted). Dart further directs our attention to *Huntington Bank v. Zuene*, 10th Dist. Franklin No. 08AP-1020, 2009-Ohio-3482, in which the trial court granted a default judgment against a pro se defendant based upon his failure to appear for deposition without explanation, failure to respond to a motion to compel, or in the alternative, motion for a default judgment, and failure to appear for a pre-trial conference. *Id.*, ¶ 6-7. The Tenth District concluded that the trial court did not abuse its discretion in entering a default judgment, since "Zeune's absence from his deposition and his utter failure to explain that absence demonstrates willfulness and bad faith." *Id.*, ¶ 21.

{¶ 61} Dart argues that as of his July 29, 2016 supplemental motion for additional contempt and Rule 37 sanctions, "Combs had only failed to respond to interrogatories and requests for production of documents," and that subsequent thereto, she "committed a variety of other discovery violations and violations of court orders, all of which were brought to the court's attention." According to Dart, "Combs' Rule 37 violations were of a continuous nature and added to the cost of litigation and facilitated delay after delay in the instant action." Dart argues that when he filed his motion for summary judgment, "both CIv.R. 56(B) and Civ.R. 37(B) issues were in play in the motion." He asserts that Combs "did not provide any adequate explanation for her failure to comply with discovery," and that she knew "that if she complied with discovery, her fraud and deceit would obviously be known." According to Dart, Combs "fraudulently obtained a massive child support obligation from lying about her residency, and in return, all she got was a relative slap on the wrist." He argues that the "only just outcome is that Combs be given

an appropriate sanction. She hampered the case, and prevented Dart from obtaining discoverable information at every turn, on purpose. The only just, sane, sanction accordingly is default judgment in favor of Dart pursuant to Civ.R. 37."

{¶ 62} Civ.R. 37(B) (1) provides:

*For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent or a witness designated under Civ.R. 30(B)(5) or Civ.R. 31(A) fails to obey an order to provide or permit discovery, including an order made under Civ.R. 35 or Civ.R. 37(A), the court may issue further just orders. They may include the following:

(a) Directing that the matters embraced in the order or other designated facts shall be taken as established for purposes of the action as the prevailing party claims;

(b) Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(c) Striking pleadings in whole or in part;

(d) Staying further proceedings until the order is obeyed dismissing;

(e) Dismissing the action or proceeding in whole or in part;

(f) Rendering a default judgment against the disobedient party; or

(g) Treating as contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

{¶ 63} "The determination of which sanction to impose is a matter left to the sound discretion of the trial court and will not be reversed on appeal unless the trial court abused

its discretion. *Quonset Hut, Inc. v. Ford Motor Co.* (1997), 80 Ohio St.3d 46, 47, 684 N.E.2d 319." *Foley v. Nussbaum*, 2d Dist. Montgomery No. 24572, 2011-Ohio-6701, ¶ 18. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable.* * * A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Enterprises* Inc. v. *River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 64}** As this Court further noted in *Foley*, ¶ 20:

The courts of Ohio have long recognized that the interests of justice are better served when courts address the merits of claims and defenses at issue rather than using procedural devices to resolve pending cases. *Moore v. Emmanuel Family Training Center, Inc.* (1985), 18 Ohio St.3d 64, 70, 479 N.E.2d 879. The harsh sanction of dismissal should be reserved for cases when a party's conduct falls substantially below what is reasonable under the circumstances, evidences a complete disregard for the judicial system or the rights of the opposing party, or when the failure to comply with discovery orders is due to willfulness or bad faith. *Id.; Barrow v. Miner,* 190 Ohio App.3d 305, 941 N.E.2d 1211, 2010–Ohio–5022, ¶ 18, citing *Ward v. Hester* (1973), 36 Ohio St.2d 38, 303 N.E.2d 861, syllabus. Where a party's conduct is "negligent, irresponsible, contumacious or dilatory," it may provide grounds for a dismissal with prejudice for a failure to prosecute or to obey a court order. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 632, 605 N.E.2d 936, citing *Schreiner v. Karson* (1977),

52 Ohio App.2d 219, 223, 369 N.E.2d 800.

**{¶ 65}** Dart initially requested a default judgment on July 29, 2016, in his supplemental motion for contempt and sanctions, and the request was not ruled upon. Dart did not renew his request. In his motion of October 13, 2016, Dart sought "a Summary Judgment/Directed Verdict" based in part upon Combs' failure to comply with the court's orders. In overruling Dart's motion for summary judgment, and consistent with the policy that the interests of justice are best served when a dispute is resolved upon its merits, the court indicated that "granting summary judgment for discovery violations does not resolve the underlying factual disputes which are best resolved by the presentation of evidence, [and] the weighing of credibility within the crucible of the courtroom." On December 29, 2016, Dart filed a motion in limine, seeking a court order prohibiting Combs from "calling any witnesses, or presenting any evidence at trial." At the start of trial, Dart did not re-new his request for a default judgment but proceeded to trial. For the foregoing reasons, we conclude that the trial court did not abuse its discretion in failing to grant a default judgment in favor of Dart, and Dart's first assignment of error is overruled.

**{¶ 66}** Dart's second assignment of error is as follows:

THE TRIAL COURT ERRED BY DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND BY NOT GRANTING DART LEAVE TO SUPPLEMENT HIS MOTION DUE TO THE LATE DEPOSITION DUE TO COMBS' CONTINUED DISOBEYANCE OF THE RULES AND COURT ORDERS.

**{¶ 67}** Dart asserts as follows:

The trial court set a summary judgment deadline of October 14, 2016. However, Combs only just attended her deposition the previous day, which had to be continued to an additional date after several hours. This was more than 2 months after she was ordered to do so. After failure to attend two Court ordered depositions, she finally attended a deposition on October 13th, 2016 after Combs retained new counsel. * * * Her deposition yielded direct testimony that proved that she was a resident of Versailles Ohio in the first half of 2010, including June of 2010. In addition, her testimony specifically regarding her tortuous interference with the orders of the trial court to attend a paternity test formed the bases of Dart's Supplement to his Motion for Summary Judgment. A Motion for Leave to File a Supplement to Plaintiff's Motion for Summary Judgment was filed on October 31st, 2016 and Combs' deposition transcript was filed on November 9th, 2016. On November 11th, 2016, * * * Combs attended a second deposition. Her contradictory testimony and admissions regarding her residency in Ohio formed the basis of Dart's Amended Supplement to Plaintiff's Motion for Summary Judgment of which leave to file was requested on November 15th, 2016. In her second deposition testimony, Combs even admitted to staying in Ohio during the time in question. This was clearly referenced in Dart's Amended Supplement for Summary Judgment. The Motions for Leave to File both the Supplement to the Summary Judgment and the Amended Supplement to the Summary Judgment were never addressed by the Court and the probative testimony

in both documents was not heard by the Court. Combs once again succeeded in circumventing the Civil Rules and the orders of the trial court.

**{¶ 68}** Dart asserts that because "Combs' did not submit to the 'crucible of the courtroom,' Dart's Motion for Summary Judgment should have been granted." Finally, Dart asserts as follows:

Accordingly, viewing all of the evidence provided in Dart's Motion for Summary Judgment and supplements, there are no genuine issues of material fact remaining. Combs admitted in her deposition testimony that she had her mail forwarded to Versailles Ohio because she was living there. In addition, she stated that although she may have previously lived in Kentucky, once she became pregnant she quit school, and did not attend again in person until the fall of 2010. And that is just her testimony alone. The evidence provided by Dart, Canby, and the Darke CSEA shows that Combs lived in Versailles Ohio during the relevant period. As a result, summary judgment should have been granted in favor of Dart. It was unjust for the court to ignore Dart's supplements, because they were only delayed due to Combs' continued indifference for the discovery process.

**{¶ 69}** As this Court has previously noted:

When reviewing a summary judgment, an appellate court conducts a de novo review. *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues

exist for trial." *Harris v. Dayton Power & Light Co.*, 2d Dist. Montgomery No. 25636, 2013–Ohio–5234, ¶ 11 (quoting *Brewer v. Cleveland City Schools Bd. Of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997) (citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980)). Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

Civ.R. 56 defines the standard to be applied when determining whether a summary judgment should be granted. *Todd Dev. Co., Inc. v. Morgan,* 116 Ohio St.3d 461, 463, 880 N.E.2d 88 (2008). Summary judgment is proper when the trial court finds: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the Motion for Summary Judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Fortune v. Fortune*, 2d Dist. Greene No. 90–CA–96, 1991 WL 70721, *1 (May 3, 1991) (quoting *Harless v. Willis Day Warehous[ing] Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 45 (1978)). The initial burden is on the moving party to show that there is no genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292–93, 662 N.E.2d 264 (1996). Once a moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dotson v. Freight Rite, Inc.*, 2d Dist. Montgomery No.

25495, 2013–Ohio–3272, ¶ 41 (citation omitted).

*Cincinnati Ins. Co. v. Greenmont Mut. Hous. Corp.*, 2d Dist. Montgomery No. 25830, 2014–Ohio–1973, ¶ 17–18.

{¶ 70} As the Supreme Court has previously noted:

> * * * Fraud has various elements: (1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with an intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance. *Burr v. Stark Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 73, 23 OBR 200, 491 N.E.2d 1101.

*Volbers-Klarich v. Middletown Management, Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 27.

{¶ 71} We initially note that while the court did not rule on Dart's motions of October 31, 2016, and November 15, 2016, the record reflects that Combs' March 16, 2012 deposition was filed November 9, 2016, her deposition of October 13, 2016 was filed October 31, 2016, and her deposition of November 11, 2016 was filed December 5, 2016. Although the court ruled on the motions for summary judgment before the November 11, 2016 deposition was filed, we cannot conclude that the supplemental evidence established the absence of a genuine issue of material fact on Dart's fraud claim. In her November 11, 2016 deposition, Combs testified that she moved to Corbin Kentucky in 2006, and that there "were probably at times, maybe during the summer

months, that I would come and stay for two or three weeks - - well obviously in 2009, maybe 2010 - - to be with my grandfather." She testified that she moved to Somerset, Kentucky from Corbin "because I was pregnant and needed change." Although Dart averred in his affidavit that at the time Combs filed her petition for custody in Kentucky, "Combs had been living at her home in Versailles, Ohio for at least 13 to 18 months so her claim about living in Kentucky for at least '180 days' was lie," in his verified response to Combs' petition, he admitted that she and GLD had resided together since GLD's birth in Kentucky for 180 days prior to the filing of the petition, and the Kentucky court so found. Having construed the evidence in a light most favorable to Dart, we conclude that the trial court properly determined that genuine issues of material fact remained for trial. Accordingly, Dart's second assignment of error is overruled.

{¶ 72} Dart's third assignment of error is as follows:

THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING PLAINTIFF'S MOTION FOR A DIRECTED VERDICT IN LIGHT OF DEFENDANT'S INADEQUATE COMPLIANCE WITH THE DISCOVERY PROCESS AND REFUSAL TO COMPLY WITH THE ORDERS OF THE TRIAL COURT, AND DUE TO THE FACT THE DEFENDANT HAD NOT PRODUCED ADEQUATE EVIDENCE TO PREVENT A DIRECTED VERDICT.

{¶ 73} Dart argues that in "light of Combs' interference with the civil process pursuant to Civil Rule 50 and because she should not benefit from her failures to comply with the civil process, the directed verdict would have been an appropriate remedy." Dart asserts that overruling his motion for a directed verdict "only further encourages parties

in other litigations to ignore orders of the court and the discovery process in order to prejudice the civil court process and win by ignoring and countermanding court orders at every turn."

{¶ 74} Dart further asserts that "Combs' deposition testimony, included as evidence at trial, provides ample evidence that she was a resident of Darke County, Ohio, during the relevant period, exclusive of Dart's other evidence in support." He asserts that Evers' testimony "does not refute Combs' testimony that she was living in Versailles, Ohio, at the time."

{¶ 75} Civ. R. 50(A)(4) provides:

When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶ 76} As this Court has noted:

"Motions for directed verdict test the legal sufficiency of evidence, not its weight or the credibility of witnesses. As a result, our review of the lower court judgment is de novo." Schafer [v. RMS Realty], 138 Ohio App.3d at [244], 257, 741 N.E.2d 155. In evaluating whether a directed verdict is merited, the court decides if " 'there exists any evidence of substantial probative value in support of [the claims of the party against whom the

motion is directed]. * * * A motion for a directed verdict raises a question of law because it examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence.' " *Id.* at 257-58, 741 N.E.2d 155 (citation omitted).

*Mitchell v. Lemmie*, 2d Dist. Montgomery No. 21511, 2007-Ohio-5757, ¶ 101.

**{¶ 77}** In overruling Dart's motion, the court indicated, "[t]hese are the cases that ought to be tried because they call into question people's credibility and the weight of the evidence. So it's not possible you'll get a merits decision" by means of a procedural device to resolve the matter. We agree with the trial court. In other words, we cannot conclude that reasonable minds could only conclude that Dart was entitled to a directed verdict based upon Combs' discovery violations.

**{¶ 78}** Regarding Dart's assertion that he provided "ample evidence" of Combs' residence in Ohio, entitling him to a directed verdict on his fraud claim, we disagree. As noted above, Dart's response to Combs' petition for custody, attached to Combs' motion for summary judgment, provides that Dart admits that GLD resided with Combs since birth in Kentucky for 180 days prior to the filing of the petition, and the Kentucky court so found. For the foregoing reasons, Dart's third assignment of error is overruled.

**{¶ 79}** Dart's fourth assignment of error is as follows:

THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING PLAINTIFF'S MOTION IN LIMINE IN LIGHT OF DEFENDANT'S INADEQUATE COMPLIANCE WITH THE DISCOVERY PROCESS AND REFUSAL TO COMPLY WITH THE ORDERS OF THE TRIAL COURT.

**{¶ 80}** Dart asserts that his liminal motion "specifically requested that any exhibits

or witnesses be excluded from trial based upon [Combs'] cavalier attitude to the civil process." He asserts that he "introduced his Motion in Limine in order to suppress Combs['] ability to present evidence based upon her continuous and willful contempt of the civil process as has been illustrated many times in this brief."

{¶ 81} As this Court has previously noted:

"Failure to object to evidence at trial constitutes a waiver of any challenge, regardless of the disposition made for a preliminary motion in limine." *State v. Maurer,* 15 Ohio St.3d 239, 259, 473 N.E.2d 768 (1984). A motion in limine, by itself, is insufficient to preserve any issue. *State v. Short,* 129 Ohio St.3d 360, 2011–Ohio–3641, 952 N.E.2d 1121, ¶ 135, citing *State v. Maurer,* supra. An appellate court does not need to consider an error during trial which could have been called, but was not called, to the trial court's attention when the error could have been corrected by the trial court. *Id.* at 260.

*State v. Strozier*, 2d Dist. Montgomery No. 25133, 2013-Ohio-965, ¶ 8.

{¶ 82} Dart's motion in limine was filed on December 29, 2016, asking the court to prohibit Combs from "calling any witnesses, or presenting any evidence at trial." On the first day of trial, counsel for Dart directed the court's attention to the pending motion, and the court indicated that it was "not going to issue a blanket ruling." Combs called one witness, Evers, and counsel for Dart did not object to his testimony. The trial court admitted 11 exhibits for Combs as follows:

THE COURT: Now, with regard to the Defendant's trial exhibits, Exhibits A, B and C are admitted by agreement. Exhibit D is moved but

not admitted. E, F, G, H, I and J are moved but not admitted. Exhibit K is not moved. Exhibit L is not moved. Exhibit M and N are admitted by agreement. Exhibit O, Exhibit P are admitted by agreement. Exhibit Q is moved but not admitted. Exhibits R, S, T are not moved. Exhibit U is admitted by agreement. Exhibit V, W and X are not moved. Exhibit Y, Z, AA are admitted by agreement. Exhibits BB and CC are not moved. DD is moved but not admitted.

The caveat is that the Court will be considering exhibits that are attached to depositions. So if exhibits which I previously ruled to be not admissible based upon the trial testimony are then attached and identified to depositions, they're then considered because of that foundation.

Do[e]s that sound like a fair, accurate recitation, Mr. Slyman?

MR. SLYMAN: Absolutely, Your Honor.

THE COURT: Mr. Glankler?

MR. GLANKLER: Yes.

{¶ 83} Since Dart did not object when counsel for Combs called Evers to testify, and he acknowledged that Exhibits A, B, C, M, N, O, P, U, Y, Z, and AA were admitted by agreement, we conclude that this assignment of error has been waived, and it is accordingly overruled.

{¶ 84} Dart's fifth assignment of error is as follows:

THE TRIAL COURT ERRED BY FIND[ING] AGAINST PLAINTIFF ON HIS FRAUD CLAIMS AGAINST DEFENDANT AT TRIAL.

1. First Issue Presented for Review: Whether the trial court erred as a

matter of law with its chosen definition of residency in analyzing Defendant's residency for legal purposes.

2. Second Issue Presented for Review: Whether the trial court erred by relying on the testimony of Joshua Evers despite inconsistencies between Evers' testimony and previous testimony and affidavit.

3. Third Issue Presented for Review: Whether the trial court erred in not allowing adequate time for closing arguments.

4. Fourth Issue Presented for Review: Whether the trial court erred in failing to continue contempt sanctions against Defendant post-judgment.

5. Fifth Issue Presented for Review: The trial court erred as a matter of law by failing to allow the admission of Plaintiff's trial exhibits 4, 5, 6 and 7.

{¶ 85} We will consider the individual issues identified by Dart in reverse order for ease of analysis. Regarding Dart's Exhibits 4, 5, 6, and 7, Dart asserts that the "trial court committed reversible and prejudicial error in excluding these documents from Dart's Exhibits."

{¶ 86} As this Court had previously noted, the "trial court has broad discretion with respect to the admission or exclusion of evidence, and its decision on such matters will not be disturbed by a reviewing court absent an abuse of discretion that results in material prejudice. *State v. Noling* (2002), 98 Ohio St.3d 44, 781 N.E.2d 88, 2002–Ohio–7044." *Stemple v. Dunina*, 2d Dist. Miami No. 04CA40, 2005-Ohio-5590, ¶ 36. Evid. R. 801(C) provides: " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

{¶ 87} Dart directs our attention to the following exchange at trial:

BY MR GLANKLER:

Q. Can you turn to Exhibit 4$^2$, please, and review those documents?

* * *

Q. Do you recall what these documents are?

A. I do.

MR. SLYMAN: Objection.

THE COURT: Basis?

MR. SLYMAN: Hearsay. He doesn't work for this agency. He didn't prepare these records. They're not his business records. * * * They contain items that would be not within his personal knowledge.

THE COURT: Mr. Glankler, response?

MR. GLANKLER: Your Honor, this has to do - - he's correct that these are records produced by the Darke County CSEA. They were produced in a previous case and in response to subpoena in this case. They do contain information that Mr. Dart is personally acquainted with.

THE COURT: He didn't prepare them, right?

MR. GLANKLER: Correct.

THE COURT: His review of them wouldn't make it an exception to the hearsay rule. So they're not self-authenticating government records under seal. Sustained. Next question.

BY MR. GLANKL

ER:

---

[2] Exhibit 4 contains "Darke County CSEA internal communications logs."

Q:   Could you please turn to Exhibit 5[3].

MR. SLYMAN:   This is going to be the same objection, Your Honor. They're documents, again, that are not prepared by him.   They're not personal records of his.   There are notices, there are documents.   If Kandy Foley is going to testify, perhaps that would be an exception but they're hearsay to him.

THE COURT:   Disagreement?

MR. GLANKLER:   Your Honor, to the extent he - - there's a seal from the United States Post Office on the bottom of this document.

MR. SLYMAN:   And he subpoenaed - -

THE COURT:   Sustained.   It's hearsay, clearly.   He doesn't have a foundation, didn't prepare it.   It's not a certified copy of a public record or under seal.

BY MR. GLANKLER:

Q.   Could you please turn to Exhibit 7, Greg.

* * *

Q.   Do you recognize this document?

* * *

A.   This is a notice I got on June 17th after I filed Exhibits 2 and 3 in the mail explaining that I had a set date for a hearing with the CSEA to get a paternity test time established and custody visitation and if he was - - [GLD] was to be my child, I was going to be paying child support and be

---

[3] Exhibit 5 contains "Darke County/ Post Master Verification of Combs' Ohio address."

able to see him.

\* \* \*

Q.   Do you recall when that test was supposed to occur?

A.   On July 20th, 2010.

Q.   \* \* \* Can you turn to the second page of Exhibit 7?

A.   Yes.

Q.   Do you recognize that document?

\* \* \*

MR. SLYMAN:   I'm going to object to this, Your Honor. This document was not prepared by him.   It was prepared by, again, the CSEA and signed by staff attorney Amy Frank.   It contains some information that - -

THE COURT: Mr. Dart - -

MR. SLYMAN: Hearsay.

THE COURT:   - - on the first page of the exhibit book you have, is your name in the upper left-hand or Lauren Combs' name in the upper left-hand?

THE WITNESS: Of Exhibit 7?

BY MR. GLANKLER:

Q.   Of Exhibit 7.   Page one.

A.   Lauren Combs' name.

Q.   Page 2.

A.   Gregory Dart.

Q.   How did you come into possession?

THE COURT:   So the answer is the letter to Mr. Dart's admissible because it's a document he received.   He would have knowledge of.   But the one to Miss Combs so far has no foundation because Mr. Slyman's objection is right.

MR. GLANKLER:   Okay.

THE COURT:   It's the same letter but it's handled differently.

BY MR. GLANKLER:

Q.   Page 3 of Exhibit 7.

MR. SLYMAN:   Same objection.

THE COURT:   Let me ask you the question:   Who prepared the exhibit?   Did you fill this out?   Page 3 of Exhibit 7?   Is that your handwriting?

THE WITNESS:   No, it's not.

THE COURT:   Okay. Sustained.

**{¶ 88}** At the close of the evidence, the trial court noted, after a recess, that with "the cooperation of counsel off the record, the Court has the following summary with regard to the trial exhibits by both parties."   The court noted as follows regarding the Exhibits:   "Exhibit 4 is not moved.   Number 5 is admitted by agreement.   Number 6 is not moved.   Number 7 the Court will admit page 2. * * *."   At the conclusion of Dart's exhibits, the court asked counsel for Dart, "did that sound like the correct summary of our evidentiary rulings?"   Counsel for Dart responded, "Yes, it does."   Dart did not move to admit Exhibits 4 and 6, Exhibit 5 was admitted, and the court admitted the second page

of Exhibit 7, namely the June 17, 2010 "Notice of Order to Appear and Schedule of Genetic Testing" that Dart testified he received from the Darke County CSEA. Page one of Exhibit 7 is a copy of the same Notice that was sent to Combs, and page three of Exhibit 7 is a document signed by "IV-D Worker" Amy Frank, which Dart acknowledged he did not create. Combs' Notice reflects an address of 10587 Conover Road in Versailles, and page three of Exhibit 7 reflects the same address. We see no abuse of discretion in the exclusion of pages one and three of Exhibit 7, since Dart did not receive or create the documents.

{¶ 89} As to Dart's fourth issue presented for review, Dart argues that while "the money judgment is not in dispute, the Trial Court abused its discretion by not limiting the Defendant's ability to respond to the Plaintiff's allegation and should have, in fact, found for the Plaintiff based upon the contempt of the Defendant for the civil process * * *." We conclude that this issue is repetitive of those in Dart's first, second, third and fourth assignments of error, namely that Dart should have prevailed due to Combs' discovery violations. We conclude that this issue lacks merit.

{¶ 90} Regarding the length of closing arguments, counsel for Dart did not object to any ten minute limit, nor does the record reflect that such a limit was imposed. This issue lacks merit.

{¶ 91} Regarding Dart's second issue, nothing in the court's Judgment Entry suggests that Evers' testimony was a factor in the court's decision; the court ruled in favor of Combs because Dart failed to establish a causal connection between the residency dispute herein and Dart's child support obligation, as set forth below in our resolution of Dart's first issue.

**{¶ 92}** Regarding his first issue, Dart asserts that "the trial court's determination that Combs may have lived a transient lifestyle is completely irrelevant, and does not stand for the proposition that Combs was not subject to service and process by the Darke County CSEA, nor that she was entitled to file suit in Kentucky." He argues that "Combs had abandoned her Kentucky residency. Accordingly, she committed fraud by filing a petition in Kentucky which said she had been a resident there for the preceding 180 days."

**{¶ 93}** We note that KRS 403.822 (1) provides in relevant part:

(1) Except as otherwise provided in KRS 403.828, a court of this state shall have jurisdiction to make an initial child custody determination only if:

(a) This state is the home state of the child on the date of the commencement of the proceeding * * *.

* * *

(2) Subsection (1) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

**{¶ 94}** " 'Home state' means the state in which a child lived with a parent * * * for at least (6) consecutive months before the commencement of a child custody proceeding. * * *." KRS 403.800(7).

**{¶ 95}** As the trial court noted, Dart did not challenge the jurisdiction of the Kentucky court over Combs' custody petition. Even if we were to conclude that Dart established the first five elements of his fraud claim, he cannot establish that his injury, namely a child support obligation calculated in Kentucky instead of Ohio, proximately resulted from Combs' alleged fraud, since he did not contest the jurisdiction of the

Kentucky court and acknowledged in his response to Combs' petition that she and GDL resided in Kentucky for 180 days prior to the filing of the petition. In other words, he cannot establish that any injury was proximately caused by the Kentucky court's reliance upon a representation by Combs regarding the duration of her residency in Kentucky. Accordingly, Dart's fifth assignment of error is overruled.

{¶ 96} Having overruled all of Dart's assigned errors, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies mailed to:

John Glankler
Jeffrey D. Slyman
Hon. Jonathan P. Hein